1

2

3

4

5

6

7        UNITED STATES DISTRICT COURT

8        CENTRAL DISTRICT OF CALIFORNIA

9             WESTERN DIVISION

10

11  JOY JACKSON, on behalf of her  )  No. CV 12-09583-VBK
    minor son, M.J.,               )
12                                 )  MEMORANDUM OPINION
                    Plaintiff,     )  AND ORDER
13                                 )
         v.                        )  (Social Security Case)
14                                 )
    CAROLYN W. COLVIN, Acting       )
15  Commissioner of Social          )
    Security,                       )
16                                 )
                    Defendant.     )
17  _____    )

18       This matter is before the Court for review of the decision by the

19  Commissioner of Social Security denying Plaintiff's application for

20  disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have

21  consented that the case may be handled by the Magistrate Judge. The

22  action arises under 42 U.S.C. §405(g), which authorizes the Court to

23  enter judgment upon the pleadings and transcript of the Administrative

24  Record ("AR") before the Commissioner. The parties have filed the

25  Joint Stipulation ("JS"), and the Commissioner has filed the certified

26  AR.

27       Plaintiff raises the following issues:

28       1.   Whether the Administrative Law Judge ("ALJ") erred by not

1          finding Plaintiff disabled pursuant to Social Security

2          Listing 111.09 considering the substantial evidence that

3          supported such a finding;

4   2.   Whether the ALJ erred by not calling upon a medical expert

5          to review Plaintiff's file in its entirety; and

6   3.   Whether the ALJ erred by not affording controlling weight to

7          the opinions of Plaintiff's treating providers.

8 (JS at 2.)

9

10     This Memorandum Opinion will constitute the Court's findings of

11 fact and conclusions of law. After reviewing the matter, the Court

12 concludes that for the reasons set forth, the decision of the

13 Commissioner must be reversed and the matter remanded.

14

15                      **I**

16   **THE ALJ DID NOT APPROPRIATELY EVALUATE FUNCTIONAL EQUIVALENCE**

17      **FOR CHILDREN AS SET FORTH IN 20 C.F.R. § 416.926a**

18     Plaintiff filed this suit on behalf of her minor child, M.J., who

19 was born February 18, 2009. (AR 388.)

20     After reviewing the record, the Court concludes that the ALJ

21 failed to properly evaluate functional equivalence pursuant to C.F.R.

22 § 416.926a. Before explaining this conclusion, the Court will briefly

23 address the relevant law as set forth in that regulation.

24     In Plaintiff's case, the ALJ determined that he has severe

25 impairments including a cranial defect, status post-surgery and

26 developmental delays. (AR 15.) Pursuant to the regulations, the

27 Commissioner must determine whether such severe impairments result in

28 limitations that functionally equal a Listing. Functional equivalence

1   is defined in § 416.926a(a) as resulting in "marked" limitations in

2   two domains of functioning, or an "extreme" limitation in one domain.

3   The domains of functioning are identified as follows: acquiring and

4   using information; attending and completing tasks; interacting and

5   relating with others; moving about and manipulating objects; caring

6   for yourself; and health and physical well being (§ 416.926a(b)(1)(i-

7   vi)).

8        In determining whether an impairment functionally equals the

9   Listings, the regulation instructs that, "We will not compare your

10  functioning to the requirements of any specific listing." (§

11  416.926a(d).)

12       There are various way to define "marked" and "extreme"

13  limitations set forth in § 416.926a(e).  One method of determining

14  "marked" limitations is identified as follows:

15           "If you have not attained age 3, we will generally find

16       that you have a 'marked' limitation if you are functioning

17       at a level that is more than one-half but not more than two-

18       thirds of your chronological age when there are no standard

19       scores from standardized tests in your case record."

20  (§ 416.926(e)(2)(ii).)

21

22       In this case, M.J. received services from and was tested by

23  Regional Center.  This testing was administered by Jenny Marshall,

24  M.A., Developmental Specialist, on December 29, 2010. (AR 339-343.)

25  At this time, M.J. was 22 months old.  As a result of testing,

26  Regional Center assessed that he had developmental delays and was at

27  the 15.50 month level (AR 340); his expressive and receptive language

28  developments were determined to be at the 13.75 month level (AR 341);

his fine motor skills were at the 14.50 month level (AR 342); and his social-emotional development was determined to be at the 18.00 month level. (Id.)  Although these testing results predated the hearing, which occurred on April 19, 2011 (AR 30), they were not available at that time to either the ALJ or to the Medical Expert ("ME"), Dr. Alperin.  The ALJ kept the record open.  In doing so, he stated in pertinent part that, "Obviously, we're going to need to get the records from the regional center.  I may send them out for a pediatric CE ... So I have to find out whether any psychological testing, at least any kind of testing that would develop any -- show any developmental abnormality but, but, in the meantime, get me the records, ..." (AR 44.)

The ALJ further indicated that after reviewing the records of the Regional Center, he would determine whether to have a subsequent hearing (which did not occur), and if so, whether to have testimony from a ME, ostensibly concerning the import and effect of the Regional Center records. (AR 45.)

In his Decision, in a footnote, the ALJ referenced the later received Regional Center records, but did not address them in their entirety, noting only that testing indicated developmental levels ranging from 13.50 to 22.50 months, and assessing the results as "essentially ... normal." (AR 17, fn 2.)  In determining the case, the ALJ primarily relied upon a psychological consultative examination ("CE") dated August 24, 2011 by Dr. Colonna (AR 17, 374-379), but it is apparent from Dr. Colonna's report that she had not reviewed any of the records or testing results from Regional Center. (See AR at 375.)

Another relevant report by a clinical psychologist, Dr. Victor Sanchez, is contained in the record at AR 388-392.  At the time, M.J.

was 31 months old.  Dr. Sanchez evaluated M.J. as having an IQ of 58, and under "developmental profile III," found communication to be at 16 months; social/emotional at 24 months; physical at 26-28 months; cognitive at 18 months; and adaptive at 18 months. (AR 392.)  This report was not referenced in the ALJ's Decision, although it predated the Decision, albeit by just a short time.  Nevertheless, it is relevant to the current evaluation.[1]

The Court also notes the statements of M.J.'s mother to Dr. Sanchez, indicating her estimate that M.J. has a total vocabulary of no more than 10 words and only occasionally forms two-word phrases. (AR 389.)  Dr. Sanchez observed that M.J.'s speech was "characterized by the use of occasional single words - some of which were spoken indistinctly." (AR 390.)  The testimony of M.J.'s mother regarding these matters at the April 19, 2011 hearing before the ALJ is consistent with her reports to Dr. Sanchez, and Dr. Sanchez's own observations.

The Commissioner depreciates, almost to the point of irrelevance, the report of Regional Center testing by staff members who, the Commissioner asserts, were not "acceptable medical sources." (JS at 6.)  But the depreciation of these sources conflicts with the regulations, particularly 20 C.F.R. § 404.1513(d).  In any event, the record is far from clear that the reports from staff members of Regional Center were not prepared by qualified and acceptable sources pursuant to the Regulation.  The record should be developed to determine the qualification of these sources.  The Commissioner's approach is akin to throwing out the baby with the bath water.  If,

---

[1]    On remand, Dr. Sanchez's evaluation of Plaintiff's IQ (58) should be addressed. (See Listing 12.05 B, C, D.)

1  indeed, the Regional Center testing is valid, then M.J. would appear

2  to have the requisite amount of "marked" limitations in functional

3  areas to satisfy the requirements for Listing level equivalence.

4       The issues identified as Nos. 2 and 3 are, effectively, subsumed

5  in the Court's discussion of the first issue.  In this case, the ME

6  who testified at the administrative hearing did not have all of the

7  relevant records to review.  In addition, as noted, the psychologist,

8  Dr. Colonna, did not have these records, thus rendering the ALJ's

9  reliance upon Dr. Colonna's report unreliable.

10      For the foregoing reasons, this matter will be remanded for

11  further hearing consistent with this Memorandum Opinion.

12      **IT IS SO ORDERED**.

13

14  DATED: August 27, 2013                    /s/
                                    VICTOR B. KENTON
15                                  UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28